UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

CHARRAE HERRON, JAN CLAYTON, )
and TAMARA JACKSON,            )
                               )
    Plaintiffs,                )
                               )
v.                             )   Case No. CV412-041
                               )
LARRY CHISOLM, individually    )
and in his Official Capacity as the )
District Attorney for Chatham  )
County, Georgia,               )
                               )
    Defendants.                )

# ORDER

Defendant Larry Chisolm moves to disqualify plaintiffs' counsel, Gwendolyn Fortson Waring, on the ground that her representation of multiple plaintiffs in this employment discrimination case will necessarily violate professional ethics standards prohibiting the representation of parties with conflicting interests and the disclosure of a client's confidences. (Doc. 22.) Chisolm has failed to substantiate his claim that Waring has a disqualifying, nonwaivable conflict of interest and has failed to show that client confidentiality has been breached or that disqualification is the proper remedy if it has. His motion is therefore **DENIED**.

Some context is in order. After he was elected as District Attorney for Chatham County, Georgia, Chisolm announced a job opening for an investigator position and hired Jonathan Drummond to fill that position. Drummond, then represented by attorney Waring, filed suit against Chisolm in 2011 claiming that Chisolm subjected him to unwelcome sexual advances. *Drummond v. Chisolm*, No. CV411-194 (S.D. Ga.). On December 1, 2011, the Court granted Waring leave to withdraw from that case, and on September 14, 2012 the Court dismissed Drummond's case without prejudice for failing to keep the Court advised of his current address.

Some two months after her withdrawal in the *Drummond* case, Ms. Waring filed suit on behalf of the present three plaintiffs,[1] who allege that Chisolm unlawfully refused to consider them for the investigator position because they were female, despite the fact that they were each more qualified for the position than Drummond. (Doc. 26.) Chisolm contends that Waring's representation of all three plaintiffs violates two provisions of the Georgia Rules of Professional Conduct. First, he argues that since the plaintiffs applied for a single available position and only one of them

---

[1] A fourth plaintiff, Christine Soucy, was named in the original complaint (doc. 1) but later sought and obtained the dismissal of her claim. (Doc. 21.)

2

could have obtained it, their interests in this case are necessarily adverse, and thus Ms. Waring's advocacy on behalf of any one of her clients will require her to advocate against the interests of her other clients. Such a conflict of interest is prohibited by State Bar Rule 1.7, Chisolm contends. Second, he argues that Waring's representation of any of the plaintiffs in this litigation will "undoubtedly" require her to disclose the confidences of both of her former clients, Drummond and Soucy, and the current plaintiffs, in violation of State Bar Rule 1.6. (Doc 22-1 at 3.) While Ms. Waring's representation of the plaintiffs in this case does raise certain ethical concerns, the Court is not persuaded that her disqualification is required by the applicable standards of professional conduct.[2]

## I. RULE 1.7

Chisolm's Rule 1.7 claim relies upon Title VII's command to individualize damages claims by multiple plaintiffs seeking a single position unless it is infeasible to do so. *See, e.g., Williams v. Fresenius*

---

[2] A disqualification motion filed in this Court is governed by its local rules and federal common law. *Herrmann v. GutterGuard*, 199 F. App'x 745, 752 (11th Cir. 2006). "The standards of professional conduct of attorneys appearing in a case or proceeding, or representing a party in interest in such a case or proceeding, are governed by the Georgia Bar Rules of Professional Conduct and the American Bar Association's Model Rules of Professional Conduct. When a conflict arises, the Georgia Bar Rules of Professional Conduct shall control."). S.D. GA LR 83(d).

*Med. Care NA, Inc.*, 2006 WL 1075249 at * 1 (S.D. Ala. Apr. 24, 2006) (noting the requirement that damages be individualized unless "a determination of the individual who should have received the position is impossible or unwieldy"). Since there was only one position to be filled, Chisolm correctly asserts that plaintiffs cannot each be "made whole," for to grant the full value of the promotion to each plaintiff would result in an unfair windfall for plaintiffs and an unfair punishment upon defendant. *See United States v. City of Miami*, 195 F.3d 1292, 1297-1301 (11th Cir. 1999) (reversed trial court's award of full back pay and other "make-whole" relief to each plaintiff in a civil contempt case involving a class of twenty-three candidate plaintiffs bypassed for one position and a class of twelve bypassed for another; the damages instead must be split *pro rata*, since awarding "full remedial relief" to every plaintiff amounted to a "sweeping windfall" for plaintiffs and was thus be "an abuse of the district court's discretion"). Since the pot is necessarily limited, Chisolm suggests that if one plaintiff was more deserving than the others to win the job, Waring would be unable to advocate on behalf of the most qualified applicant without compromising her duty of loyalty to her other

clients. (Doc. 22-1 at 3-8.) While Chisolm concedes that courts often apportion damages among competing applicants for a single position where it cannot be determined which would have been selected absent the discrimination, he reasons that Ms. Waring should not be forced to seek a *pro rata* share for her clients when one of them may have been entitled to full recovery. (Doc. 22-1 at 3-8); see *Williams*, 2006 WL 1075249 at *1 (if the fact-finder cannot determine which individual plaintiff in a pool of other qualified plaintiffs would have obtained the position, the damages may be split *pro rata*.). To deprive any one of her clients a crack at winning the full award, Chisolm asserts, would violate Rule 1.7(a)'s mandate to refuse representation where there is a "significant risk that the lawyer's . . . duties to another client . . . will materially and adversely affect the representation of the client."

A potential for conflict evitably arises whenever an attorney undertakes the representation of multiple plaintiffs each seeking the same prize. But it is not enough for opposing counsel simply to point out this obvious fact, for the professional conduct rules contemplate that the parties represented by an attorney facing such a conflict may give their

informed consent to continue with counsel "notwithstanding a significant risk of material and adverse" consequences posed by the joint representation. Rule 1.7(b); *id.* comment 7 ("Simultaneous representation of parties whose interests in litigation may conflict, such as coplaintiffs or codefendants, is governed by paragraph (b)" of Rule 7.1). Such client consent, however, is not permissible in "circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients." Rule 1.7(c)(3). The comment to that rule elaborates (though somewhat unhelpfully) that client consent should not be sought by a lawyer facing a potential conflict "when a disinterested lawyer would conclude that the client should not agree to the representation *under the circumstances . . .*." *Id.* at comment 5 (emphasis added). The conflict rule, therefore, contemplates a contextual approach in assessing whether the particular conflict of interest is so momentous that no lawyer would seek or accept the client's consent to the joint representation.

Chisolm asserts that this case involves just such a nonwaivable conflict of interest, thus mandating Ms. Waring's withdrawal. But

Chisolm's attorney has not even shown that he has standing to assert the Rule 1.7 conflict issue. The commentary to that Rule places the primary responsibility for resolving conflict of interest questions on "the lawyer undertaking the representation." *Id.* comment 15 (quoted in *Bernocchi v. Forcucci*, 279 Ga. 460, 464 (2005)). Opposing counsel may properly raise the issue only where "the conflict is such as clearly to call into question the fair and efficient administration of justice." *Id.* Such an assertion by opposing counsel "should be viewed with caution, however, for it can be misused as a technique of harassment." *Id.* Accordingly, "opposing counsel must provide *substantiation*" not only that the joint representation of multiple parties poses a potential conflict of interest but also that the conflict is "sufficiently serious" to preclude the representation even if the clients give their informed consent. *Bernocchi*, 279 Ga. at 463 (emphasis added).

Here, Chisolm's attorney has failed to offer any "affidavit, deposition testimony or party admission to substantiate his [claim]" that Waring faces such a nonwaivable conflict of interest. *Meehan v. Antonino*, 2002 WL 31559712 at *3 (Conn. Super. 2002) (cited by

*Bernocchi*, 279 Ga. at 463). Where multiple plaintiffs competing for a single position suffer impermissible discrimination but it is unclear which plaintiff would have been hired or promoted had there been no discrimination, courts frequently apportion any damages award equally among the job applicants, giving each a *pro rata* share of the recovery. *Shealy v. City of Albany, Ga.*, 137 F. Supp. 2d 1359, 1363 (M.D. Ga. 2001) (damages payable to white candidates for fire department battalion chief position, following determination that city engaged in reverse discrimination by appointing black candidate to position, would be established by ascertaining full monetary value of promotion, and dividing that sum pro rata among candidates); *see City of Miami*, 195 F.3d 1297-1301 (same result in civil-contempt-based Title VII case).

Absent some evidentiary showing that these plaintiffs stand on substantially different footing from each other -- i.e., that one was more likely to obtain the job than the other two -- *pro rata* distribution would appear to be warranted in this case, and Ms. Waring has represented as much in her response. (Doc. 28 at 6.) Chisolm has not offered any evidence suggesting that the Court will be able to determine which of the

8

plaintiffs would have received the investigator position absent discrimination. A *pro rata* apportionment of any recovery would appear to be acceptable. He thus has failed to support his contention that this is likely a case where "a disinterested lawyer" would conclude that there is such a substantial risk that the plaintiffs' interests will be directly adverse to each other that it would be improper to ask them to waive the conflict and consent to joint representation. Given the lack of substantiation for the claim that this case inevitably involves a nonwaivable conflict of interest, Chisolm's attorney lacks standing to assert the disqualification issue. *See United States ex rel. Friddle v. Taylor, Bean & Whitaker Mortg. Corp.*, 2012 WL 1066510 at * 8 (N.D. Ga. Mar. 27, 2012) (an attorney benefits from a presumption that they have complied with the relevant ethical rules, and in the absence of contrary evidence, relators' counsel's standing to file a motion to disqualify defense counsel was in doubt).

Even assuming that Chisolm is entitled to seek Waring's disqualification on ethical grounds, he has failed to demonstrate that she faces a nonwaivable conflict of interest under the particular

9

circumstances of this case. Prophylactic "disqualification . . . is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). Such a remedy deprives a "party of the representation of their own choosing." *Id.* While there is the potential here that an actual conflict could arise if one plaintiff has persuasive evidence suggesting she would have won the position, there has been no showing that such evidence actually exists. *See Adkins v. Hosp. Auth. of Houston County, Ga.,* 2009 WL 3428788 at * 8 (M.D. Ga. Oct. 20, 2009) (a "possible conflict" does not preclude representation). Ms. Waring, who knows her clients' individual circumstances as well as anyone, has represented in her response brief that "it is unlikely that a factfinder could . . . discern which applicant would or should have obtained the position." (Doc. 28 at 6.) True, Waring does suggest that in addition to an apportioned share of any back-pay award plaintiffs may also be entitled to "other equitable relief such as front-pay and fringe benefits" (*id.* at 6), including "bumping" the current person holding the investigator position. (*Id.* at 7.) She points out, however, that even if such equitable relief is

10

appropriate (which she concedes is highly questionable), the Court could order *the defendant* to select the most qualified candidate, using nondiscriminatory methods, thereby sparing the Court from that task. (*Id.*) Further, the Court notes that plaintiffs' amended complaint seeks only "injunctive relief preventing and prohibiting Defendant Larry Chisolm from engaging in his present practices in violation of" Title VII (doc. 26 at 8), and neither in their amended pleading nor in their portion of the consolidated pretrial order (doc. 33 at 7-9) do plaintiffs seek any sort of displacement remedy. And no other allegation in the pleadings or in the pretrial order would make a *pro rata* distribution of any recovery an unlikely outcome in this litigation.

As the Court sees no reason to doubt Ms. Waring's assessment that it would be difficult or impossible to determine which plaintiff would have secured the position absent the discrimination, it is likely that any damages award will be apportioned among them in a *pro rata* fashion. Chisolm, therefore, has not shown that this is a case where a "disinterested lawyer would conclude that the client should not agree to

the representation under the circumstances."³ Rule 1.7 comments; *see Kaiser v. Stewart*, 1997 WL 186329 at * (E.D. Pa. Apr. 10, 1997) (noting that nonwaivable conflicts under the Pennsylvania's similarly structured Rule 1.7 typically arise in the "criminal context" or where there is a strong likelihood that an irreconcilable conflict will arise between the joint representees).⁴

The Court nonetheless sees problems with the purported conflict waivers submitted by Waring's clients. Rule 1.7 contemplates that parties may consent to joint representation by a single attorney notwithstanding the existence of a conflict *provided* each party has

---

³ Notably, in several of the cases defendant cites in support of his nonwaivable conflict argument, multiple plaintiffs were represented by the same legal team. *See Williams v. Fresenius Med. Care N.A., Inc.*, No. CV104-632 (S.D. Ala. June 20, 2007) (five plaintiffs sharing substantially the same legal team); *Arnold v. U.S. Dep't of Interior*, No. CV396-3077 (N.D. Tex. Apr. 26, 1999) (three plaintiffs represented by the same two attorneys); *Dougherty v. Barry*, 607 F. Supp. 1271, 1275 (D.C.D.C. 1985) (six plaintiffs represented by the same three attorneys). Not one of those courts suggested that shared representation of coplaintiffs resulted in a nonwaivable conflict.

⁴ The Court further notes that since the total possible recovery in this case will be relatively small (for the annual salary for the position was only some $36,000 (doc. 28 at 9)) and each plaintiff will likely receive only a *pro rata* share of any award, a practical consequence of disqualifying Ms. Waring will likely be the plaintiffs' inability to attract three separate attorneys to take up their individual cases. Thus, disqualifying Ms. Waring will diminish each plaintiff's chance of securing any recovery at all. The Court suspects that the true purpose of defendant's motion is to achieve just this result.

consulted with counsel, "received in writing reasonable and adequate information about the material risks of the representation," and been afforded an opportunity to consult with independent counsel. Rule 1.7(b). Ms. Waring has not shown that these requirements have been met. Further, the acknowledgments that Waring has secured from her clients reflect the client's understanding "that there is *not* a conflict of interest" or "potential for divided loyalties" arising from the joint representation. (Doc. 28-1 (emphasis added)). Of course, this is simply not the case for there is clearly the potential for conflict here, as Ms. Waring readily concedes. So, Ms. Waring must obtain proper Rule 1.7(b) waivers from each plaintiff permitting her to continue her joint representation. *U.S. ex rel. Friddle*, 2012 WL 1066510 at *10 (citing *Lee v. Hutson*, 600 F. Supp. 957, 959 (N.D. Ga. 1984)). She must explain to her clients *in writing* the risks they face by proceeding with her as counsel, informing them that they will receive only a *pro rata* share of any recovery and will likely not be entitled to displace the current holder of the investigator position.[5] She must also advise her clients of the right to

---

[5] Bumping the incumbent position-holder is a rare and at best troubling

consult with another lawyer about the conflict matter before granting their consent to joint representation by an attorney who faces at least the potential of divided loyalties at some point in this litigation. Rule 7.1(b). She is **DIRECTED** to submit those waivers to the Court within 21 days.

## II. RULE 1.6

Chisolm next insists that plaintiffs' counsel must be disqualified under Rule 1.6, since she will "undoubtedly" be forced to reveal the confidences of both her former and present clients. (Doc. 22-1 at 8-10.) That Rule generally requires a lawyer to "maintain in confidence all

---

remedy:

> A district court has "broad, equitable discretion to grant any equitable relief it deems appropriate to make persons whole for injuries suffered on account of unlawful employment discrimination." *Rivers v. Washington County Board of Educ.*, 770 F.2d 1010, 1012 (11th Cir.1985). This discretion includes the authority to displace or "bump" an incumbent employee from a position in order to place a successful plaintiff in that position. *Walters v. City of Atlanta*, 803 F.2d 1135, 1148–49 (11th Cir. 1986); *Brewer v. Muscle Shoals Board of Educ.*, 790 F.2d 1515, 1522–23 (11th Cir.1986); *see also Lander v. Lujan*, 888 F.2d 153, 156–57 (D.C.Cir.1989) (explaining statutory basis for bumping). In exercising this discretion, a district court should be guided by the notion that "bumping can be a problematic remedy in Title VII cases, to the extent that someone other than the wrongdoing employer is made to pay for the employer's violation." *Lander*, 888 F.2d at 159 (R.B. Ginsburg, J., concurring). Displacement should, therefore, "be used sparingly and only when a careful balancing of the equities indicates that absent 'bumping,' plaintiff's relief will be unjustly inadequate." *Walters*, 803 F.2d at 1149.

*Hicks v. Dothan City Bd. of Educ.*, 814 F. Supp. 1044, 1050 (M.D. Ala. 1993).

14

information gained in the professional relationship with a client . . . unless the client gives informed consent . . . ." Rule 1.6. According to Chisolm, Waring must be "disqualified from the representation of *any* of the plaintiffs in this suit" because she was likely privy to confidences regarding Soucy's and Drummond's qualifications for the position, and will ultimately disclose those confidences during this litigation. (Doc. 22-1 at 9-10.) Chisolm suggests that a similar problem arises as the confidential information Waring gained from each of her present clients, for she will be forced to choose between violating those confidences or withholding information crucial to each client's success. (*Id.* at 10.)

Chisolm offers no smoking-gun evidence that such a breach of client confidentiality has actually occurred,[6] arguing only that Waring's duty of loyalty to her existing clients will likely, if not inevitably, lead to a

---

[6] While Ms. Waring never expressly denies that she has revealed or intends to reveal any client confidences (noting only that "there is no evidence" of such) (doc. 28 at 9)), she points out that the *Savannah Moring News*, under the auspices of the Georgia Open Records Act, obtained and published detailed information of Drummond's job application, including his relative inexperience and the fact that he failed to meet all of the listed criteria for the investigator position. (Doc. 28 at 2); *see* Jan Skutch, *Chatham County District Attorney Larry Chisolm faces harassment, bias complaints*, SAVANNAH MORNING NEWS (Sept. 5, 2010), http://savannahnow.com/news/ 2010-09-05/chatham-county-district-attorney-larry-chisolm-faces-harassment-bias-co mplaints. The Court further notes that Chisolm's counsel has made no effort to secure any affidavits or unsworn statements from Mr. Drummond or Ms. Soucy confirming that Ms. Waring has revealed any of their confidences.

violation of Rule 1.6. This conclusion is premised upon his belief that each plaintiff "*must show* that she was the most qualified applicant for the one available position in order to recover fully." (Doc. 22-1 at 10 (emphasis added).) But this is a flawed premise, for as the Court noted in its earlier discussion of Rule 7.1, there is good reason to believe that Waring will not be placed in the position of arguing that any one of her clients is entitled to a full recovery. Because the evidence and practicalities of the case have led Waring and her clients to the belief that each is entitled only to a *pro rata* share of any recovery, any information that Waring has obtained in confidence about her present or former clients' qualifications does not have the central importance that Chisolm assumes. So, Chisolm is mistaken in his assertion that "this case is governed *entirely* by how each Plaintiff's qualifications stack up against those of *all* the other applicants for the position, including her co-Plaintiffs." (Doc. 32 at 6.)

Chisolm is correct that, absent consent, Waring is precluded from revealing the confidences of her former or present clients even if that information would be helpful to an individual plaintiff's case. But he is

mistaken in assuming that this perceived dilemma (of either violating Rule 1.6 or failing to advocate zealously for each plaintiff) requires Waring's disqualification, for each plaintiff is entitled to accept representation by an attorney who is precluded from using some potentially critical information that was gained in confidence from one of Waring's other clients. This must be an informed decision, however, so the Court will require Ms. Waring to bring this matter to the plaintiffs' attention and have them state in writing that they understand and accept the risk.

Even if Waring has breached a client confidence in violation of Rule 1.6, Chisolm has not shown that disqualification is the proper remedy.[7] As one Court has explained, either a disciplinary proceeding initiated by a

---

[7] "Although disqualification is ordinarily the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification is never automatic." *United States v. Miller*, 624 F.2d 1198, 1201 (3rd Cir. 1980), *quoted in SWS Fin. Fund A v. Salomon Bros., Inc.*, 790 F. Supp. 1392, 1400 (N.D. Ill. 1992); *accord Central Milk Producers Co-op v. Sentry Food Stores*, 573 F.2d 988, 991 (8th Cir. 1978) ("Although the Code of Professional Responsibility establishes proper guidelines for the professional conduct of attorneys, a violation does not automatically result in disqualification of counsel."); *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976) ("[A] violation of professional ethics does not in any event automatically result in disqualification of counsel."); *Bodily v. Intermountain Health Care Corp.*, 649 F. Supp. 468 (D. Utah 1986) (refraining from disqualifying law firm which court found had violated the disciplinary rule prohibiting representation adverse to a present client).

court or a malpractice suit filed by the injured client may serve as an effective sanction for such misconduct.

> In some ways, these . . . two sanctions are preferable to disqualification, because unlike disqualification they impose costs only on the attorney who has violated the rules. To the extent that civil and disciplinary penalties accurately reflect the social cost of the risk posed by an attorney's misconduct, these sanctions alone could, in principle, provide sufficient deterrent. Disciplinary sanction also can provide the necessary solemn denunciation of a violation of a lawyer's ethical duties.
>
> Disqualification, by contrast, is a blunt device. The sanction of disqualification foists substantial costs upon innocent third parties. The innocent client . . . may suffer delay, inconvenience and expense and will be deprived of its choice of counsel. When disqualification is granted, sometimes the new attorney may find it difficult to master fully the subtle legal and factual nuances of a complex case . . . actually impairing the adversarial process. Of course, the court may also lose the time and labor invested in educating itself in the proceedings prior to disqualification. It is no secret that motions to disqualify are frequently brought as dilatory tactics intended to "divert [ ] the litigation from attention to the merits." *Bobbit v. Victorial House, Inc.*, 545 F. Supp. 11224, 1128 (N.D. Ill. 1982).
>
> Given the costs imposed by disqualification and the theoretical availability of alternative means of enforcement of the disciplinary code, a court should look to the purposes behind the rule violated in order to determine if disqualification is a desirable sanction.

*SWS Fin. Fund A. v. Salomon Bros., Inc.*, 790 F. Supp. 1392, 1400-1401

(N.D. Ill. 1992). These considerations assume particular importance in a case such as this, where defendant has failed to establish that any breach of client confidence has actually occurred or will "undoubtedly" occur in this case.

Chisolm "bears the burden of proving the grounds for disqualification." *Herrmann*, 199 F. App'x at 752. And "the mere appearance of impropriety is no longer grounds for disqualifying a lawyer from representing a party to lawsuit." *Id.* at 755 (quotes and cite omitted). Even assuming Chisolm has standing to raise this claim, which is arguable at best, the Court is satisfied that any violation of Rule 1.6 would best be addressed through an ancillary proceeding. Nevertheless, the Court expects Ms. Waring to seek the consent of any former or present client before she reveals any of their confidences.

### III. CONCLUSION

For the reasons explained above, defendant's motion to disqualify Waring (doc. 22) is **DENIED**. Waring shall submit informed consent waivers from the remaining plaintiffs within 21 days of the date of this Order.

**SO ORDERED** this  19th  day of December, 2012.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA